## Scully *versus* Kirkpatrick, to use, &c.

1. State remedies against fraudulent debtors are not suspended by the operation of the Bankrupt Act.

2. A defendant was arrested as a fraudulent debtor on a warrant under the Act of July 12th 1842, and brought before a judge, who after hearing directed him to enter into bond with surety for his appearance at an adjourned hearing June 18th. He did not appear at that day. The docket had this entry: "June 18th—defendant not appearing is called and surety called and bond forfeited." *Held*, that the entry was not a record and not evidence.

3. The judge was not acting as a court of record, and had no power to adjudge the bond forfeited.

[Scully v. Kirkpatrick.]

4. The proceedings under a warrant of arrest under the Act of 1842, are not part of the proceedings in the cause, they are merely incidental and collateral.

5. The sheriff or constable is not required to make return into the office or to the court; he executes the warrant by arresting the defendant and bringing him before the judge or keeping him in custody till he is discharged.

6. In a suit on the bond against the surety; evidence that defendant had been stricken down by sickness at a distance from the place of hearing, &c., so as to be prevented from appearing at the time fixed, that he appeared there as soon as he was able, after his recovery: *Held* to be admissible.

7. If the condition of a bond become impossible by the act of God, the obligation is discharged.

8. When the act to be performed is of a purely personal character, which can be done only by the party himself, the act of God in producing sickness and insanity, as well as death will excuse performance.

October 15th 1875.    Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas, No. 1, of *Allegheny county*: Of October and November Term 1875, No. 175.

This was an action of debt brought August 14th 1873, in the name of John M. Kirkpatrick to the use of Joseph S. Finch and John W. Painter, trading as Joseph S. Finch & Co., against John D. Scully.

The action was on bond, dated May 31st 1873, executed by Abraham Gumberts, and the defendant, as his surety, in the sum of $10,000, conditioned for the appearance of Gumberts, who had been arrested under the Act of July 12th 1842, &c.

The circumstances of the case are as follows:—

On the 3d of March 1873, the beneficial plaintiffs filed a petition in the District Court of the United States for the district of Indiana for an adjudication of bankruptcy against Gumberts. The petition set forth the petitioners' demand to be on a promissory note from Gumberts to the petitioners, dated October 5th 1872, payable in four months, for $5177.58.

The acts of bankruptcy alleged were, that being a merchant he had stopped payment and had not resumed in fourteen days, and that he had sold his goods with intent to defraud his creditors. On the 8th of March 1873, Gumberts, in pursuance of an order approved by counsel in the District Court, filed an answer denying the allegations of the petition and asking that the matter might be inquired of by a jury; a trial of the issues was thereupon ordered.

On the 14th of April 1873, Finch & Co. brought three suits in the District Court of Allegheny county against Gumberts; one on a draft by them on him, dated January 6th 1873, payable in ninety days, for $1377.89; another on the note mentioned in the petition in bankruptcy; the third on another draft of January 6th 1873, payable in sixty days, for $1364.12.

On the same 14th of April, Finch & Co. presented a petition to Hon. John M. Kirkpatrick, one of the judges of the District

[Scully *v.* Kirkpatrick.]

Court of Allegheny county, setting out that Gumberts had fraudulently contracted the debt for which the note of $5177.58 had been given, and had obtained the goods for which it had been given, by false pretences; and by like fraud and false pretences, &c., had obtained other goods, and that they had brought suits for the note and drafts which were then pending.

They prayed for a warrant under the Act of July 12th 1842.

Judge Kirkpatrick accordingly issued a warrant of arrest against Gumberts, and he was brought before the same judge on the 15th of April.

Further proceedings were had before Judge Kirkpatrick. On the 1st of May, Gumberts filed his answer, admitting the purchase of the goods but denying the fraud and false pretences. He further set out the proceedings in bankruptcy; also, that being a citizen of the state of Indiana, the plaintiffs commenced a prosecution against him in the Court of Quarter Sessions of Allegheny county for obtaining the goods mentioned by plaintiffs' petition by false pretences and had him brought to Allegheny county to answer that charge, for the purpose of serving civil process upon him within the jurisdiction of the District Court.

Hearing proceeded, and after adjournments from time to time, the docket of the District Court shows the following entries :—

" May 31st 1873, defendant appears, and on his motion, hearing adjourned until June 18th 1873, at 10 o'clock, A. M., at District Court room, No. 2. Defendant held in $10,000, with surety, for his appearance. Bond approved by the court."

The condition of the bond was :—

" The condition of this obligation is such, that, whereas, the above bounden A. Gumberts was brought before the said John M. Kirkpatrick, judge aforesaid, on a warrant of arrest upon the petition of Joseph S. Finch & Co., under the provisions of the Act of July 12th 1842 ; and, whereas, the hearing was by said judge continued until Wednesday, the 18th day of June 1873, at District Court room, No. 2, at 10 A. M. Therefore, if the said A. Gumberts do appear at the time and place aforesaid, then this obligation to be void and no effect, otherwise to be and remain in full force and virtue."

Then follow these docket entries :—

" June 18th 1873, plaintiffs appear, defendant not appearing is called and surety called and bond declared forfeited. *Eo die* rule ex parte defendant to show cause why the forfeiture should not be taken off."

On the 20th of June 1873, Gumberts appeared by his counsel in the District Court of the United States in Indiana, withdrew his answer and consented to be adjudged a bankrupt, and he was thereupon adjudged a bankrupt. The usual proceedings in bankruptcy followed the adjudication. Finch & Co. were not amongst the creditors who proved their debts before the register.

[Scully v. Kirkpatrick.]

On the 30th of June 1873, the rule in the District Court of Allegheny county to strike off the forfeiture of the bond was discharged. On the same day Finch & Co. obtained judgment by default against Gumberts in their three suits; the aggregate amount of the judgments, was $8091.47.

On the trial, September 28th 1874, before Collier, J., the foregoing facts appeared by the evidence of both parties.

The defendant offered to show : " That prior to, and on the 18th day of June 1873, the time appointed in bond in suit for the appearance of A. Gumberts before the Hon. John M. Kirkpatrick, to answer the warrant of arrest in the bench warrant proceeding—he, the said Gumberts, was ill and unable to appear at the time and place required by the said bond ; that a few days before June 18th 1873, he had been stricken down by sickness at his home at Evansville, Indiana, and was thereby prevented appearing in the District Court at Pittsburg on June 18th 1873 ; to be followed by evidence that so soon as said Gumberts was able to leave home, to wit, on the 30th day of June 1873, he hastened to Pittsburg, and appeared in the District Court of Allegheny county, before the Hon. John M. Kirkpatrick (the said Joseph S. Finch & Co. and their counsel being then and there present), to answer the complaint of Joseph S. Finch & Co. in the bench warrant proceedings, the 30th of June being the earliest day he was able to appear at Pittsburg after his recovery from his illness; and that since then said Gumberts died. For the purpose of showing that by the act of God the said Gumberts was unable to appear before Judge Kirkpatrick on June 18th 1873, and the defendant, Scully, was unable to produce him ; and also for the purpose of showing that there was no breach of condition of the bond in suit."

The plaintiff objected to the offer because: " It appears by the record of the District Court of Allegheny county, already in evidence, that on June 18th 1873, a decree of forfeiture was entered on the bond in suit; that same day rule to take off forfeiture was granted defendant, which, after argument on June 30th 1873, was discharged by the court. These judgments and decrees of the court, being a court of competent jurisdiction, cannot be attacked collaterally."

The offer was rejected and a bill of exceptions sealed for the defendants.

The plaintiff's first point, which was affirmed, was :—

Under all the evidence in the case, the plaintiff is entitled to recover the amounts due Joseph S. Finch & Co., the equitable plaintiffs on the judgments in No. 853, 854 and 855, April Term 1873, already in evidence, with the costs in each.

The defendant's points, which were refused, were :—

1. Upon the whole evidence in the case the verdict should be for the defendant.

[Scully v. Kirkpatrick.]

2. The bench warrant proceedings in the District Court of Allegheny county having been instituted by Joseph S. Finch & Co. subsequently to the institution by them of the proceedings in bankruptcy against said A. Gumberts in the United States District Court for the District of Indiana, the warrant of arrest and all subsequent proceedings, including the bond in suit, were illegal and null and void.

3. The proceedings in the bench warrant case before Hon. John M. Kirkpatrick, never having been determined finally, and the said Gumberts, having appeared therein on June 30th 1873, the plaintiff is not entitled to recover on said bond.

The jury found for the plaintiff for $10,000, the amount of the bond, to be released on payment of $8721.58, subject to the opinion of the court on question of law reserved, viz. :—

" Whether the District Court of Allegheny county had jurisdiction of the bench warrant proceedings instituted by Joseph S. Finch & Co. against A. Gumberts, after the said Joseph S. Finch & Co. had instituted the proceedings in bankruptcy against said Gumberts in the United States District Court for the District of Indiana, and during the pendency thereof, and whether the bond in suit taken pending the said bankrupt proceedings can be enforced against the said John D. Scully."

The court, Collier, J., on the 4th of June 1875, entered judgment on the verdict for the plaintiff on the reserved question.

The defendant took a writ of error ; he assigned for error :—

1. Affirming the plaintiff's point.

2, 3, 7. Refusing the defendant's points.

4. Entering judgment for the plaintiff on the reserved question.

6. Rejecting the defendant's offer of evidence.

*M. W. Acheson* and *H. W. Weir*, for plaintiff in error.—The Bankrupt Act, *ipso facto*, suspended all action upon future cases under the insolvent laws of the state where the insolvent laws act upon the same subject-matter and the same person as the bankrupt act ; and all proceedings upon such cases commenced under the state laws after that time are null and void: Commonwealth *v.* O'Hara, 6 Phil. R. 402 ; Van Nostrand *v.* Carr, 30 Md. 128 ; In re Reynolds, 8 Rhode Island R. 485 ; Martin *v.* Berry, 37 Cal. 208 ; Ex parte Eames, 2 Story 322 ; Griswold *v.* Pratt, 9 Met. 16 ; Nesbit *v.* Greaves, 6 W. & S. 120 ; Barber *v.* Rodgers, 21 P. F. Smith 362.    The evidence should have been received on the principle, *actus Dei nemini facit injuriam.*    If the condition of a bond was possible at the time of making it, and afterwards becomes impossible by the act of God, the obligor shall be excused: Com. Dig. " Condition" L. 12, D. I.; 2 Bl. Com. 340.

The action of Judge Kirkpatrick, in making a record of the fact of non-compliance with the condition of the bond, &c., was

[Scully v. Kirkpatrick.]

not such final adjudication as precluded inquiry in an action against the bail.

*D. T. Watson* (with whom was *R. B. Carnahan*), for defendant in error.—The states in matters of bankruptcy have concurrent authority with the United States except in such cases as the laws of the United States reach : Sturges *v.* Crowninshield, 4 Wheaton 122 ; Van Nostrand *v.* Barr, 30 Md. 128 ; Ex parte Eames, 2 Story 326 ; Shepherdson's Appeal, 36 Conn. 25. An adjudged bankrupt may be arrested and give bond to take the benefit of the state insolvent laws : Malthe *v.* Hotchkiss, 38 Conn. 80 ; Reed *v.* Taylor, 32 Iowa 209 ; Steelman *v.* Mattix, 36 N. Jersey 344 ; Shears *v.* Solbinger, 10 Abb. Pr. (N. S.) 287 ; Jordan *v.* Hall, 9 R. I. 218 ; In re Reynolds, 9 Bank. Reg. 50.

Section 26 of the Bankrupt Act provides that : "No bankrupt shall be liable to arrest during the pendency of the proceedings in bankruptcy in any civil action unless the same is founded on some debt or claim from which his discharge in bankruptcy would not release him." Section 30 provides " That no debt created by fraud * * * * * shall be discharged under this act." The Bankrupt Act, therefore, is not only not in conflict with the Act of July 12th 1842, on this point, but authorizes such proceedings to be taken : In re James B. Devoe, 2 Bank. Reg. 11 ; In re J. H. Kimball, Id. 74 ; In re Ward E. Robinson, Id. 108.

A discharge (in bankruptcy) is no bar to an action for a debt created by fraud, although the creditor proves his claim and received a dividend thereon : Stokes *v.* Mason, 8 Am. L. J. 266 ; Stewart *v.* Emerson, 52 N. H. 301 ; Flannigan *v.* Cary, 37 Texas 67 ; Morse *v.* Hutchins, 102 Mass. 439 ; Jones *v.* Russell, 44 Georgia 460 ; Halliburton *v.* Carter, 55 Mo. 435 ; Heffren *v.* Jayne, 39 Indiana 463-471.

The Common Pleas could not review collaterally, the decision of Judge Kirkpatrick in forfeiting the bond, or the propriety of his so doing : Railroad Co. *v.* City of Erie, 1 Grant 212 ; Warner *v.* Scott, 3 Wright 274 ; Mann *v.* Drexel, 2 Barr 202 ; Souter *v.* Baymore, 7 Id. 415.

Mr. Justice SHARSWOOD delivered the opinion of the court January 6th 1876.

In regard to the question presented upon this record on the reserved point in the court below, as to the validity of the warrant of arrest and the proceedings thereon, under the Act of Assembly of July 12th 1842, entitled " An Act to abolish imprisonment for debt, and to punish fraudulent debtors," Pamph. L. 334, it was fully considered after two arguments and decided adversely to the plaintiff in error, in re W. C. Barr : opinion filed November 10th 1875. It was then held that the state remedies against fraudulent

debtors are not suspended by the operation of the Bankrupt Act of Congress, inasmuch as it is expressly declared in that act, that "no debt created by the fraud or embezzlement of the bankrupt or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged by proceedings in bankruptcy:" Sect. 5117, Revised Statutes U. S. 993; and also, "no bankrupt shall be liable during the pendency of the proceedings in bankruptcy to arrest in any civil action, unless the same is founded on some debt or claim from which his discharge in bankruptcy would not release him." Barber *v*. Rodgers, 21 P. F. Smith 362, was not the case of a debt fraudulently contracted.

As the 1st sect. of the Act of 1842, abolishing imprisonment for debt is unconditional, the creditor would be without remedy against a fraudulent debtor, under either the laws of the state or of the United States, unless he could pursue him under that act to compel the application of his acquisitions subsequent to the institution of the proceeding in bankruptcy to the payment of the debt.

The second question which arises relates to the evidence of the breach of the condition of the bond in suit. It appears that the proceedings upon the warrant of arrest issued in the original case by Judge Kirkpatrick, were entered upon the docket of the court, and there is this entry thereon: "June 18th 1873—plaintiffs appear, defendant not appearing, is called and surety called and bond declared forfeited." This was all the evidence of the breach of the condition. But this entry on the docket did not make a record, unless it was so in point of fact. We are of opinion that it was no part of the record, and the entry therefore not evidence; much less conclusive of the breach of the condition. The proceedings on a warrant of arrest under the Act of 1842, are no part of the proceedings in the cause, but merely incidental and collateral thereto. The jurisdiction and authority might just as well have been committed to any other officer as to a judge of the court in which the suit was commenced or the judgment obtained. The warrant does not issue from the office of the prothonotary, and is not under the seal of the court. It is issued by the judge himself to the sheriff or any constable, who is nowhere required to make return into the office or to the court, but who executes the warrant by arresting the defendant and bringing him before the judge issuing the warrant, and keeping him in custody until he is duly discharged. There is no provision, from one end of the act to the other, that the proceedings or any part of them shall be filed of record. By sect. 7, "The judge conducting such inquiry shall have the same powers to issue subpœnas to enforce the attendance of witnesses, and to punish witnesses refusing to testify, as is vested in the court of which he is a judge." The final commitment by sect. 8, is under the hand of the judge reciting the facts

[Scully *v.* Kirkpatrick.]

of the case and directing the defendant to be committed to the jail of the county. How then could the proceedings be entered on the record—no act from their commencement to their termination being an act of the court? There was no proper evidence before the court below of the breach of the condition of the bond, and the first point of the defendant below should have been affirmed.

The only other question presented, arises upon the sixth assignment of error—the rejection of the offer of evidence by the defendant. The bond in suit was given under the provision of the 6th sect. of the Act of 1842, that "in case of an adjournment the judge may take a bond with or without surety for the appearance of the party arrested at the adjourned hearing." The day named in the condition of the bond for the adjourned hearing was June 18th 1873. The rejected offer was to prove "that a few days before June 18th 1873, the defendant, Gumberts, had been stricken down by sickness, at his home at Evansville, Indiana, and was thereby prevented appearing at the day fixed, to be followed by evidence that so soon as said Gumberts was able to leave home, to wit, on the 30th day of June 1873, he hastened to Pittsburg and appeared before Judge Kirkpatrick to answer the complaint; the 30th of June being the earliest day he was able to appear at Pittsburg after his recovery from his illness." This evidence was objected to as irrelevant, and incompetent because contradicting the record. We have seen that there was no record to contradict, and that in his action in the premises, Judge Kirkpatrick was not acting as a court of record, and had no power to adjudge the bond to have been forfeited.

It remains to consider whether the facts presented in the offer were relevant to the issue; in other words, whether they would have constituted a good defence had the breach of the condition been proved—the offer in effect admitting that Gumberts did not appear before Judge Kirkpatrick on the 18th June 1873, the day appointed for the adjourned hearing.

It is undoubted law that if the condition of a bond becomes impossible to be performed by the act of God, the obligation is discharged: Co. Litt. 206 *a.* But a condition was then only considered in the eye of the law as impossible if it could not by any means take effect: Id.; Butler's note 98. Death of the party who is to perform the condition of course releases the bond—but that it could only be done with great danger to the life of the party is not sufficient. Some hard examples are to be found in cases of special bail, but there is a peculiarity in the alternative condition of the recognisance of special bail which is to be remembered in reading these cases: Wynn *v.* Petty, 4 East 102; Grant *v.* Fagan, Id. 189; Bowerback *v.* Payne, 2 Wash. C. C. Rep. 464; Rathbone *v.* Warren, 4 Johns. 310; Olcott *v.* Lilly, Id. 407. Some relaxa-

tion of the rigidity of the rule occasionally appears : Thomas *v.* Buckley, 5 Cowen 25 ; Boardman *v.* Fowler, 1 Johns. Cas. 41. The power of a court in giving relief against their own orders, though of the most final and absolute kind, is illustrated in Doty *v.* Whittlesey, 1 Root 310. · There a party on his way to pay money for the redemption of a mortgage under a final and absolute decree of foreclosure at a day certain, was taken sick and could not proceed ; the court extended the time. See also Crane *v.* Hanks, Id. 468.

It is said, indeed, that in matters of positive contract and obligation created by the party (for it is different in obligations or duties created by law) it is no ground for the interference of equity, that the party has been prevented from fulfilling them by accident ; or that he had been in no default. The reason is that he might have provided for such contingencies by his contract if he had so chosen : 1 Story's Eq. Jur., § 101.

This reason, however, would not apply to the case before us : for this was a statutory bond and could only be given in the form prescribed, as was held by this court in McClelland *v.* Smith, 2 Jones 303.

The principle so broadly stated is not. supported by the later cases. Equity will often in the case of positive contract give relief, not perhaps on the ground of accident, but by an equitable interpretation of the terms of the contract. They will imply that the parties necessarily intended an exception. Pollard *v.* Shaaffer, 1 Dall. 210, an early case in this state was of that character. The later English cases very distinctly recognise this equitable doctrine. In Hall *v.* Wright, El., B. & E. 746, Crompton, J., said : " When a contract depends upon personal skill, and the act of God renders it impossible, as for instance in the case of a painter employed to paint a picture, who is struck blind, it may be that the performance might be excused." And see Taylor *v.* Caldwell, 3 Best & Smith 826.

In Boast *v.* Firth, Law Rep. 4 C. B. 1, to an action for breach of an apprenticeship deed, the defendant (the father) pleaded that the apprentice " was and is prevented by the act of God, to wit, by permanent illness, happening and arising after the making of the indenture, from remaining with or serving the plaintiff during all the said term ;" it was held on demurrer a good plea or excuse of performance. There are several American cases which sustain the position that when the act to be performed is of a purely personal character, which can only be done by the party himself, the act of God in producing sickness and insanity as well as death, will be an excuse for performance : Dickey *v.* Linecott, 7 Shepley 353 ; Knight *v.* Bean, 9 Id. 536 ; Fenton *v.* Clark, 11 Verm. 360 ; Hubbard *v.* Belwin, 1 Williams 645 ; Fuller *v.* Brown, 11 Metc. 440 ; Fraley *v.* North, 19 Barb. 342 ; Wolfe *v.* Howe, 24 Id. 174 ;

[Scully *v.* Kirkpatrick.]

Jarroll *v.* Farris, 6 Missouri 159. And there is a decision by the Supreme Court in New York which applies the principle to a case precisely the same as that before us, and is therefore directly in point. In an action of debt on a recognisance conditioned that the sheriff arrested on an attachment should appear on a day named to answer for a contempt, the defendant, the surety in the recognisance, pleaded that the sheriff before the day was taken violently sick and could not be removed; after the day he died. On demurrer the plea was held to be sufficient: The People *v.* Manning, 8 Cowen 297.

And is it not a most reasonable and just doctrine? Had Gumberts died on the 17th of June 1873, the bond would have been discharged and the surety released. Would it not shock our sense of common justice in a court where equity is part of the law, to be told that if he was dying on that day, but did not expire until the 19th of June, we must hold his surety bound? The impossibility of personal appearance would have been the same in both cases. If he had become a raving maniac, must he be brought before the judge in a strait jacket? In either case his presence would have answered no purpose of the inquiry. He could have replied to no questions. Had he, however, put in no appearance before his death, there would have been some force in the contention that the plaintiff had lost all the benefit of his proceeding, and the surety must bear the consequences—that the plaintiff had the law on his side and equal equity, and there ought therefore to be no interposition in behalf of the surety. But the offer here was to show that Gumberts did appear as soon as he was able, and the plaintiff might have had all the advantage of the proceeding. If then his excuse for not appearing at the day named was a valid one in equity, his appearance at the subsequent term as soon as he was able saved the bond, and the error of the judge in not continuing the proceeding, ought not to prejudice his surety.

Judgment reversed, and *venire facias de novo* awarded.